**AUTONATION USA CORPORATION d/b/a AutoNation USA, Appellant,**

v.

**Theresa M. LEROY, Appellee.**

**In re AutoNation USA Corporation d/b/a Autonation USA, Relator.**

**Nos. 14–02–00496–CV, 14–02–00728–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 17, 2003.

Francis I. Spagnoletti, James T. Liston, John P. Abbey, Houston, and Suzanne Woods, Washington, D.C., for appellants.

Mark A. Carrigan, Houston, Richard L. Tate, Richmond, for appellees.

Panel consists of Chief Justice BRISTER and Justices HUDSON and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

In these consolidated actions, AutoNation seeks mandamus relief from the trial court's denial of a motion to compel arbitration, and appeals the trial court's order certifying a class. We conditionally grant the writ of mandamus, reverse the trial court's order certifying a class, and remand.

## BACKGROUND FACTS

AutoNation formerly operated used-car megastores in Texas and elsewhere in the United States. Customers who purchased a used car signed a "Purchase Agreement" detailing the various charges and credits related to the transaction. On the back of the Purchase Agreement was the following provision:

Any controversy or claim arising out of or relating to this Purchase Agreement or the breach thereof shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Any controversy or claim subject to this arbitration provision shall be decided by one arbitrator, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Any arbitration proceeding shall be conducted in the city and state where the vehicle purchased hereunder was purchased from [AutoNation].

Customers who financed their purchase also signed a "Retail Installment Contract" ("RIC") governing the terms of the financing. The RIC did not include an arbitration provision.

The Purchase Agreement reflected that AutoNation charged a documentary fee of $50 in connection with the purchase of a vehicle. Both the Purchase Agreement and the RIC included a statement that the documentary fee may not exceed $50. In 1997, AutoNation began charging customers a vehicle preparation fee of $45. Between December 1997 and February 1998, however, certain RIC forms reflected a documentary fee of $95. According to AutoNation, the $95 charge was the result of a computer programming error that caused the $50 documentary fee to be combined with the $45 vehicle preparation fee.

Theresa Leroy, suing for herself and on behalf of a proposed class, alleged that the $95 documentary fee in the RIC violated section 348.006 of the Texas Finance Code, which prohibits a documentary fee in excess of $50. Leroy also complained that the vehicle preparation fee is not authorized under Chapter 348.

Leroy moved for certification of a class of all persons or entities who purchased and financed a car from AutoNation in Texas and were charged more than $50 for a documentary fee or who were charged a vehicle preparation fee. AutoNation opposed the motion for class certification and moved to compel Leroy to arbitrate her claims as provided in the Purchase Agreement.

The trial court denied AutoNation's motion to compel arbitration, finding that Leroy's claims focused on the RIC and were outside the scope of the arbitration clause contained in the Purchase Agreement. At the same time, the trial court granted Leroy's motion for class certification. The court defined the class as follows:

Any person who purchased and financed a car at AutoNation in Texas from 1997 to present where the retail installment contract reflects a documentary fee in excess of $50.00, save and except that there is excluded from the class any person who opts out of inclusion in the class after receiving notice of the action.

This mandamus and interlocutory appeal followed.

## DISCUSSION

Because we find the arbitration issue dispositive of both the mandamus action and the appeal, we will first discuss AutoNation's request for mandamus relief. We will then address AutoNation's appeal of the class certification order.

## I. AUTONATION'S REQUEST FOR MANDAMUS RELIEF

In the mandamus action, AutoNation contends the trial court abused its discretion by denying AutoNation's motion to compel arbitration because (1) Leroy's claims fall within the scope of the arbitration provision in the Purchase Agreement, and (2) the Purchase Agreement and RIC must be construed together. In response, Leroy contends that mandamus should be denied because AutoNation's own actions

show it does not consider disputes arising under the RIC to be within the scope of the arbitration provision, and her Finance Code claims arise solely under the RIC and are completely independent of the Purchase Agreement. Leroy additionally attempts to avoid the effect of the arbitration clause by asserting that the clause is unconscionable and AutoNation was not diligent in seeking mandamus relief.

### A. The Applicable Law

■ The parties agree this action is governed by the Federal Arbitration Act (FAA) and mandamus is the appropriate method by which to challenge the trial court's ruling. *See* 9 U.S.C. § 2 (2000); *In re Am. Homestar of Lancaster, Inc.,* 50 S.W.3d 480, 484 (Tex.2001). In determining whether to grant mandamus relief in the context of a denial of an order to compel arbitration under the FAA, we apply an abuse of discretion standard. *See Am. Homestar,* 50 S.W.3d at 483. A trial court has no discretion to determine what the law is and has no discretion in applying the law to the facts. *Id.*[1] Consequently, the trial court's failure to analyze or apply the law correctly is an abuse of discretion. *Id.*

■ The Texas Supreme Court has unequivocally held that "[f]ederal and state law strongly favor arbitration." *Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996). The Court has further stressed that "a presumption exists in favor of agreements to arbitrate under the FAA," and that "[c]ourts must resolve any doubts about an agreement to arbitrate in favor of arbitration." *Id.* A party opposing an arbitration agreement bears the burden of defeating it. *Id.* Once the party seeking

arbitration establishes that an agreement exits under the FAA and that the claims raised are within the agreement's scope, the trial court has no discretion but to compel arbitration. *Id.*

■ The Texas Supreme Court has also emphasized that under the FAA, "any doubts as to whether [a plaintiff's] claims fall within the scope of the agreement must be resolved in favor of arbitration." *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex.1995). Indeed, "[t]he policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* (quoting *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 37 (5th Cir.1990)).

■ In determining whether a claim falls within the scope of an arbitration clause, courts must "focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *Marshall,* 909 S.W.2d at 900. In *Pennzoil Co. v. Arnold Oil Co.,* 30 S.W.3d 494, 498 (Tex.App.-San Antonio 2000, no pet.), the court explained that "if the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement, the claim will be arbitrable." However, if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration. *Id.* The language in the arbitration provision here, requiring arbitra-

---

1. This lack of discretion in applying substantive law is not to be confused with the trial court's duty (under *Schein* ) in a class action involving multi-state class participants to de-

termine which state's law applies to the claims. *See Henry Schein, Inc. v. Stromboe,* 46 Tex. Sup.Ct. J. 103 (Tex.2002).

tion of any controversy or claim "arising out of or relating to" the Purchase Agreement or the breach thereof, is recognized as broad language favoring arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Hou–Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex. App.-Houston [1st Dist.] 1997, no writ); *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 230 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

**B. Are Leroy's Claims Within the Scope of the Arbitration Clause?**

AutoNation contends Leroy's claims touch matters relating to the Purchase Agreement because her petition includes allegations that AutoNation wrongfully charged some purchasers of used cars a documentary fee in excess of $50, and/or AutoNation improperly charged purchasers vehicle preparation fees. Additionally, Leroy alleges that AutoNation is liable to all class members for compensatory and statutory damages, including "for reimbursement of that portion of the documentary fee which exceeds the $50 maximum or the amount of the vehicle preparation fee." AutoNation points out that Leroy's allegations concerning the vehicle preparation fee and her request for damages, including reimbursement of the fee, directly impacts upon AutoNation's rights and Leroy's obligations under the Purchase Agreement because the vehicle preparation fee is included in the terms and conditions of the Purchase Agreement.

■ Leroy's primary argument in response is that AutoNation's failure to arbitrate other disputes relating to the RIC demonstrates that AutoNation itself does not consider such claims within the scope of the arbitration clause. In support of this contention, she points to testimony of AutoNation representatives that they were not aware of any arbitration provision in their contracts and did not arbitrate debt collection or other related disputes arising out of the RIC. Leroy argues there is no evidence that, prior to this class action, AutoNation ever resolved a dispute arising under the RIC through arbitration, and this demonstrates that the RIC and the Purchase Agreement are not interrelated. Leroy also asserts that AutoNation's own lawyers did not discover the arbitration clause or seek to enforce it until more than two years after this case was filed.

Leroy cites no case law in support of this argument. However, in *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576 (Tex.App.-Houston [14th Dist.] 1999, no pet.), this court rejected a similar argument that a party to a contract containing an arbitration provision waived the right to enforce the arbitration provision if that party previously litigated matters involving the contract. In *Valero*, we began our analysis by recognizing the general rule that "[a] party waives its right to arbitration if it substantially invokes the judicial process to the detriment of the opposing party." *Id.* at 594. To establish waiver, the party opposing arbitration bears the burden of showing that the other party acted inconsistently with the arbitration agreement and that it was prejudiced by such conduct. *Id.* After reviewing the decisions of other courts addressing the issue as well as general Texas law on waiver, we held that Valero, the party seeking to compel arbitration, had not waived its right to enforce the arbitration provision in the contract even though it had on one occasion litigated a dispute over a related contract that contained a similar arbitration provision. *Id.* In so holding, we found it significant that Teco, the party opposing arbitration, had not claimed that Valero delayed its demand for arbitration and had not explained how any previous litigation prejudiced arbitration of Teco's present

claims. *Id.* at 595. Similarly, Leroy does not claim that AutoNation substantially invoked the judicial process to her detriment or that AutoNation's previous actions prejudiced arbitration of her claims. Therefore, we reject Leroy's assertion that AutoNation's actions in other cases prevent it from seeking arbitration in the present case.

■ Leroy also counters that the crux of her claim is that the documentary fee exceeded $50 in violation of the Texas Finance Code, and this claim can be made without any reference to the Purchase Agreement. *See* TEX. FIN.CODE ANN. § 348.006(c) (providing that the documentary fee may not exceed $50 for a motor vehicle retail installment contract). She asserts that she only included the allegations relating to the vehicle preparation fee in her petition in response to AutoNation's defense that the $95 documentary fee included the $45 vehicle preparation fee. She also asserts that the RIC is a separate and independent contract used to finance the purchase of a vehicle, while the Purchase Agreement has nothing to do with financing. As support for this assertion, Leroy argues that the Texas Finance Code applies only to retail installment contracts like the RIC and financed transactions, noting that Leroy would have no claim under the Texas Finance Code absent the RIC. Again, we disagree.

We find that Leroy's allegations touch matters covered by the Purchase Agreement. Leroy raises claims and seeks damages for a vehicle preparation fee that can only be determined by reference to the Purchase Agreement. Even if we ignore Leroy's allegations relating to the vehicle preparation fee, however, we remain unpersuaded by Leroy's assertion that the crux of her claim—the payment of a documentary fee in excess of $50—does not implicate the Purchase Agreement. While Leroy arranged to get financing for the documentary fee as part of the total cost of her car purchase through the RIC, she did not contract in the RIC to pay the documentary fee. The Purchase Agreement, not the RIC, contained Leroy's agreement to pay AutoNation the documentary fee, as well as the vehicle preparation fee—both of which were itemized in the Purchase Agreement. On these facts, the arbitration clause covers the dispute at issue, and we do not see how Leroy's claims are completely independent of the Purchase Agreement so that they could be maintained without reference to it. *See Marshall,* 909 S.W.2d at 899; *Arnold Oil Co.,* 30 S.W.3d at 498.

■ Moreover, the arbitration provision here is broad, encompassing "[a]ny controversy or claim arising out of or relating to" the Purchase Agreement. The financing of Leroy's vehicle is a matter that arises out of and relates to Leroy's agreement to purchase the vehicle, as reflected in the Purchase Agreement. But for Leroy's purchase, there would have been no relationship between the parties and no financing transaction that is the basis of Leroy's claims. *See In re Conseco Fin. Servicing Corp.,* 19 S.W.3d 562, 570 (Tex.App.-Waco 2000, orig. proceeding) (holding that broad arbitration provision encompassed statutory and tort claims not based on the formation, negotiation, terms, or performance of contract); *Gerwell v. Moran,* 10 S.W.3d 28, 32–33 (Tex.App.-San Antonio 1999, no pet.) (holding that broad arbitration provision in 1993 partnership agreement encompassed claims arising out of 1999 agreement to assign partnership interest). Therefore, we hold that Leroy's claims are within the scope of the arbitration clause contained in the Purchase

Agreement.[2]

## C. Is the Arbitration Clause Unconscionable?

 Leroy argues that, even if we determine that the arbitration clause applies to this dispute, it should not be enforced because it is unconscionable. The FAA declares written provisions for arbitration "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2; *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687–88, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). The doctrine of unconscionability can be applied to arbitration provisions in the same manner as it applies to other contracts. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex.2001). The burden is on the party seeking to avoid the arbitration provision. *Id.* The basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *FirstMerit*, 52 S.W.3d

at 757. Its purpose is not to disturb the allocation of risks because of superior bargaining power, but to prevent oppression and unfair surprise. *See id.*

 Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex.2002). Courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision. *Id.* at 572. Here, Leroy asserts that the arbitration provision is procedurally unconscionable because it is not conspicuous, and that it is substantively unconscionable because denial of the class action here is fundamentally unfair and violates public policy.[3]

### 1. *The Arbitration Clause is Not Inconspicuous.*

 Leroy argues that the arbitration provision is procedurally unconscionable because it is not conspicuous. Leroy contends that AutoNation failed to make con-

2. We also agree with AutoNation that Leroy's claims are subject to arbitration based on the well-settled principle of Texas contract law that "[when] several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other." *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000). Here, the Purchase Agreement and the RIC reflect separate aspects of the same transaction; therefore, the arbitration clause is applicable to Leroy's complaints about the RIC on this ground as well as on the on the ground of the broad scope of the arbitration clause. *See Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir.1990); *Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 394–95 (5th Cir.2002); *see also Quality Truck and Auto Sales, Inc. v. Yassine*, 730 So.2d 1164, 1169–70 (Ala.1999)

(holding that purchaser of vehicle was required to arbitrate her claims even though seller did not sign bill of sale containing arbitration clause when seller "accepted and acted upon" bill of sale by contemporaneously executing retail installment contract).

3. By way of a footnote in her response to AutoNation's petition for mandamus, Leroy incorporates the argument made in her appellee's brief that the arbitration clause is unconscionable because it is not conspicuous. It is unclear from the footnote whether Leroy intended to incorporate all the arguments she makes in support of her contention that the arbitration clause is unconscionable; however, in an abundance of caution and in the interest of a complete review, we will address her arguments regarding unconscionability in their entirety in this section.

sumers aware of the provision, and the provision is so "well-hidden" that its own lawyers did not discover it for two years. Leroy notes that the arbitration provision is placed in the middle of several provisions and "lacks a single characteristic to notify someone of its contents." In support of this contention, Leroy directs us to *Goodwin*, 924 S.W.2d at 944, in which the Texas Supreme Court rejected an argument that an arbitration provision was not conspicuous when the provision was conspicuously displayed. Leroy also cites Texas Business and Commerce Code section 1.201(10) for the general definition of "conspicuous." However, Leroy cites no authority holding that an arbitration provision governed by the FAA must meet a conspicuousness requirement.

▆▆▆ We do not find Leroy's authority persuasive. Texas law invalidates only certain types of clauses if they are inconspicuous. *See* TEX. BUS. & COM.CODE ANN. § 2.316 (exclusion or modification of implied warranty of merchantability); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 510–11 (Tex.1993) (contractual indemnity); *cf. Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 386–87 (Tex.1997) (no-damages-for-delay clause need not be conspicuous). An agreement governed by the FAA may be set aside for state contractual defenses that apply to all contracts generally, but not for defenses that apply only to arbitration contracts or clauses. *Casarotto*, 517 U.S. at 687, 116 S.Ct. 1652. Thus, even if Texas law imposed a specific conspicuousness requirement that might otherwise be applicable to this arbitration provision, such a law would likely be preempted by the FAA.

In any event, we find that the provision here was not so "well-hidden" as Leroy contends, but was sufficiently obvious to give Leroy notice that claims against Auto-Nation would be resolved through arbitra-

tion. The Purchase Agreement consists of a single page, front and back. On the front, directly above the customer signature line, the following paragraph appears:

By executing this Purchase Agreement, Purchaser acknowledges that (1) Purchaser has been advised that the motor vehicle purchased hereunder is a used motor vehicle, (2) Purchaser has been provided a copy of the Purchase Agreement and *has read and understands the Terms and Conditions set forth herein (including the Additional Terms and Conditions set forth on the reverse side hereof)*, and (3) *Purchaser has agreed to purchase the motor vehicle described herein on the terms and conditions set forth herein and accepts such terms and conditions as a part of the Purchase Agreement. . . .*

(emphasis added). Additional language on the front page provides that "Purchaser is encouraged to review this Purchase Agreement (including the Additional Terms and Conditions set forth on the reverse side hereof) carefully and seek individual professional advice if Purchaser has any questions concerning this transaction." On the back of the document, the additional terms and conditions, including the arbitration provision, are separately numbered and set out in uniform type. We do not find this contract's arbitration provision so inconspicuous that it is unconscionable. *Cf. Webb v. Investacorp, Inc.*, 89 F.3d 252 (5th Cir.1996) (noting arbitration provision was not unconscionable when size of print was uniform throughout contract).

**2. *The Arbitration Clause is not Fundamentally Unfair.***

▆▆▆ Leroy also contends that enforcement of the arbitration provision is substantively unconscionable because prohibiting class treatment of small-damage consumer claims is fundamentally unfair. If we enforce the arbitration clause, Leroy

argues that consumers like her will be discouraged from seeking legal redress on an individual basis, while businesses like AutoNation will be encouraged to engage in illegal conduct because they will not have to be concerned about potential class actions. This assumes that the right to proceed on a class-wide basis supercedes a contracting party's right to arbitrate under the FAA. However, the primary purpose of the FAA is to overcome courts' refusals to enforce agreements to arbitrate and to ensure that private agreements to arbitrate are enforced according to their terms. *See Volt Info. Sciences, Inc. v. Bd. of Trustees,* 489 U.S. 468, 478–79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The Texas Supreme Court has made it clear that the FAA is part of substantive law of Texas, *Capital Income Properties–LXXX v. Blackmon,* 843 S.W.2d 22, 23 (Tex.1992), and has stressed that "[p]rocedural devices," such as Rule 42s provision for class actions, "may 'not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action.' " *Southwestern Ref. Co. v. Bernal,* 22 S.W.3d 425, 437 (Tex.2000). Accordingly, there is no entitlement to proceed as a class action. *See, e.g., Johnson v. West Suburban Bank,* 225 F.3d 366, 371, 374–75 (3d Cir.2000); *Marsh v. First USA Bank,* 103 F.Supp.2d 909, 923 (N.D.Tex.2000); *Bernal,* 22 S.W.3d at 439.

█ Leroy does not argue that arbitration will deprive her of any substantive rights or statutory remedies under the Finance Code that she would have otherwise as a member of a class. Instead, she argues that without the class action device, consumers will be disinclined to pursue individual remedies for small damages.[4] While there may be circumstances in which a prohibition on class treatment may rise to the level of fundamental unfairness, Leroy's generalizations do not satisfy her burden to demonstrate that the arbitration provision is invalid here.[5]

---

4. Leroy does not contend that proceeding in arbitration deprives her of any right to invoke the class action procedure available for violations of the Finance Code subtitle governing loans and financed transactions. *See* TEX. FIN. CODE ANN. § 349.403. Even if she had raised the issue, however, federal law has long held that, so long as a party's substantive rights may be adequately vindicated, statutory claims may be arbitrated in the absence of a specific congressional intent to preclude a waiver of judicial remedies for the statutory rights at issue. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer,* the plaintiff argued that arbitration procedures could not adequately further the purposes of the Age Discrimination in Employment Act because they did not provide for class actions, but the Supreme Court disagreed, explaining that the availability of the class action procedure under the ADEA did not evidence a congressional intent to bar individual attempts at conciliation. *Id.* at 32, 111 S.Ct. 1647; *see also Johnson,* 225 F.3d at 377–78 ("Even if we were to conclude that the statute implies a right to proceed as a member of a

class, *Gilmer* indicates that rights of this nature are waivable so long as the rights the statute was designed to protect may be vindicated by other means. We do not think this unfair.").

5. Nor do we find Leroy's authority persuasive. In support of her argument that the arbitration provision is unconscionable because it prevents individuals from asserting their legal rights, Leroy cites two cases, *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862 (Cal.Ct.App.2002), and *Powertel v. Bexley,* 743 So.2d 570 (Fla.Dist.Ct.App. 1999). In determining that the arbitration clauses before them were unconscionable, the courts in *Szetela* and *Bexley* considered the economic efficiencies and deterrent effect of the class action procedure, but other issues factored more heavily into the decisions. For example, in *Szetela,* a credit card company's arbitration provision expressly prohibited class actions or actions as a private attorney general in arbitration, which conflicted with California legislative policy. *See Szetela,* 118 Cal.Rptr.2d at 867–68. Similarly, in *Bexley,* the arbitration provision in a cellular tele-

### 3. *The Arbitration Clause does not Violate Public Policy.*

Leroy also argues that enforcement of the arbitration clause in this circumstance will violate public policy in the following ways: (1) purchasers will be discouraged from pursuing their legal remedies because of the expense and the small amounts involved; (2) most purchasers would likely remain unaware of the illegal fees charged; and (3) arbitration of some 220 separate claims for small damage amounts would unnecessarily overburden judicial resources. We will address each in turn.

■ First, Leroy contends that consumers will be deterred from seeking redress against AutoNation because the costs of arbitration will far exceed the illegal $45 fee they were charged. In support of her argument, Leroy directs us to no record evidence, but merely asserts that the American Arbitration Association's commercial arbitration rules require an initial filing fee of at least $650.00, and that once a consumer commits to pay the arbitration administrative fee, the arbitrator's fee, and attorneys' fees to assist in the arbitration, "it is not unreasonable to believe the consumer's cost will exceed $4,500.00." Because Leroy did not make this argument below, we find it is waived.

■ Next, we address Leroy's argument that most putative class members would not be aware of the alleged illegal fees "because most customers are not intimately familiar with the Texas Finance Code." Leroy directs us to no authority that this factor, either alone or in conjunction with other factors, requires that an arbitration provision be invalidated as sub-

phone provider's service agreement limited the provider's liability to actual damages and required customers to waive important statutory rights. *See Bexley,* 743 So.2d at 576–77.

stantively unconscionable. Additionally, we note that on the front of both the Purchase Agreement and the RIC there is a notice in all capital letters reciting the following:

A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO PURCHASERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO THE CLOSING OF A SALE. A DOCUMENTARY FEE MAY NOT EXCEED $50.

This notice is sufficient to put consumers on notice that a documentary fee in excess of $50.00 would be a violation of the law.

■ Turning to Leroy's last argument, she contends that the arbitration provision violates public policy because some 220 individual arbitrations, lawsuits, or trials to determine the enforceability of the arbitration provision, in which each consumer seeks a small damages amount, would drain consumer and judicial resources. However, as the Supreme Court made clear in *Moses H. Cone Memorial Hospital v. Mercury Construction Co.,* the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Co.* 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) (emphasis in original); *see also Johnson,* 225 F.3d at 375 (citing *Moses H. Cone* for the principle that the FAA requires piecemeal litigation to give effect to arbitration clauses "[w]hatever the benefits of class actions").

### D. Did AutoNation Fail to Act Diligently in Seeking Mandamus Relief?

Here, Leroy does not argue that she will be deprived of any damages or statutory rights in arbitration.

Finally, Leroy argues that AutoNation was not diligent in pursuing mandamus relief because of its eight-month delay in filing its petition for mandamus. *See Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993) (denying petition for mandamus when party's unjustified four-month delay in seeking relief demonstrated lack of diligence). However, this case is distinguishable from *Rivercenter*. As noted above, a party seeking arbitration waives its right to arbitrate when its actions cause the party opposing arbitration to suffer actual prejudice. *See Valero*, 2 S.W.3d at 594. A delay in making a demand for arbitration does not constitute a waiver when the party opposing arbitration suffers no actual prejudice. *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 931 (Tex.App.Houston [1st Dist] 1996, no writ). Here, Leroy does not assert that she was prejudiced in any way by the delay. Therefore, we reject her contention AutoNation is not entitled to seek mandamus relief.

We conditionally grant the writ of mandamus and direct the trial court to vacate its order of December 28, 2001, denying AutoNation's motion to compel arbitration.

## II. AUTONATION'S INTERLOCUTORY APPEAL

AutoNation's interlocutory appeal of the trial court's order certifying a class relies in part on the existence of the arbitration provision in the RIC. In its first issue, AutoNation argues the order should be reversed because the claims of all the class members are subject to arbitration, and therefore the requirements for class certification cannot be met. Notwithstanding the applicability of the arbitration provision, AutoNation contends in three additional issues that the purported class cannot satisfy the requirements of Rule 42 because individual issues will predominate over common issues, class treatment is not superior to other means of adjudication, and Leroy is not an adequate class representative. In response, Leroy contends the trial court correctly determined that arbitration had no bearing on the class certification issues and the court did not abuse its discretion in granting class certification.

Because we find that, like Leroy, the claims of the putative class members are subject to arbitration, we hold that the trial court erred in certifying a class but denying arbitration. Our resolution of AutoNation's first issue renders it unnecessary for us to discuss its remaining issues.

Although we have determined that Leroy's claims are subject to arbitration, that does not necessarily foreclose the possibility of class-wide relief. During oral argument, we raised the question of the possibility of a class-wide arbitration. We requested the parties prepare supplemental briefing on the issue, and both sides responded with excellent briefs. But arbitration of a class action is a relatively new and dynamic concept. *See* Richard Jeydel, *Consolidation, Joinder and Class Actions: What Arbitrators and Courts May and May Not Do*, 57 DISP. RESOL. J. 24, 26 (2003) ("With employment, credit card and other form agreements now being extended to large classes of potentially similarly situated individuals, [class-wide arbitration] is an area ripe for development."). Leroy's claims may be well-suited for class-wide arbitration. However, we have decided not to address the issue at this time because (1) class-wide arbitration was not requested below, (2) this record contains no evidence that a class-wide arbitration is feasible or desirable, and (3) the trial court has not had the opportunity—nor has the arbitrator

had an opportunity [6]—to consider this as an option. If the parties desire to request this type of relief, they may do so in the trial court.

We therefore reverse the trial court's May 15, 2002 order granting certification and remand the case to the trial court.

## CONCLUSION

We conditionally grant AutoNation's writ of mandamus and direct the trial court to vacate its order of December 28, 2001, denying AutoNation's motion to compel arbitration. Our writ will issue only if the trial court fails to do so. We also reverse the trial court's May 15, 2002 order granting class certification and remand for further proceedings in accordance with this opinion.

6. Because we have not been asked to address this question, we express no opinion on whether an arbitrator may determine if an arbitration is done on a class-wide basis.