**Reversed and Remanded and Majority and Dissenting Opinions filed September 10, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-01066-CV

---

**JEFFERY J. SHELDON AND ANDRAS KONYA, MD, PH.D., Appellants**

**V.**

**PINTO TECHNOLOGY VENTURES, L.P., PINTO TV ANNEX FUND, L.P., PTV SCIENCES II, L.P., RIVERVEST VENTURE FUND I, L.P., RIVERVEST VENTURE FUND II, L.P., RIVERVEST VENTURE II (OHIO), L.P., BAY CITY CAPITAL FUND IV, L.P., BAY CITY CAPITAL FUND IV CO-INVESTMENT FUND, L.P., CHRIS OWENS, BILL BURKE, REESE TERRY, AND CRAIG WALKER, Appellees**

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-41145**

---

## DISSENTING OPINION

When deciding whether claims fall within the scope of a forum-selection clause, a reviewing court should engage in a "common-sense examination of the substance of the claims." *See In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677

(Tex. 2009) (orig. proceeding) (per curiam). The majority misapplies this standard by looking primarily at the label of the claims, rather than their substance. I would hold that the Shareholders' claims—all of which pertain to the dilution of equity interests—arise out of their Shareholders Agreement (the "Agreement"), and thus, fall within the scope of the Agreement's forum-selection clause.

The clause at issue provides that certain courts in Delaware "shall have exclusive jurisdiction and venue over any dispute arising out of this Agreement." Whether a claim "arises out of" an agreement turns on the substance of the claim, not artful pleading. *Id.* A claim may arise out of an agreement if the claimant seeks a direct benefit from the agreement, or if liability is derived from the agreement as opposed to some other general obligation imposed by law. *Id.* A claim may also arise out of an agreement if, but for the agreement, the claimant would have no basis to complain. *See In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 886 (Tex. 2010) (orig. proceeding) (per curiam).

The majority holds that the Shareholders' claims fail the "but for" test from *Lisa Laser* because the claims are "an assortment of non-contractual claims." The majority explains that the claims are non-contractual for two reasons: (1) the Shareholders did not sue for a breach of the Agreement, and (2) "all of the purported obligations that the IDev Parties allegedly breached arise either under statute or common law."

In effect, the majority concludes that only claims for breach of contract and tortious interference with contract can satisfy the "but for" test. The majority's reasoning is erroneous because it considers just the labels of the claims, which conflicts with binding supreme court authority that we must focus on the substance of the claims instead. *See In re Fisher*, 433 S.W.3d 523, 529 (Tex. 2014) (orig. proceeding) (stating that a court should consider the substance of the claims,

2

without regard to the claimant's characterizations or artful pleadings). The majority is also wrong in taking such a limited view of the "but for" test. The supreme court has noted that a "but for" requirement has in itself "no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." *See Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc.*, No. 13-0597, — S.W.3d —, 2015 WL 3653330, at *10 (Tex. June 12, 2015). In addition, no other court of appeals has used *Lisa Laser* to limit the scope of a forum-selection clause.

The substance of the Shareholders' claims is that the IDev Parties diluted the Shareholders' equity interests by engaging in various forms of tortious conduct. If the Shareholders' equity interests had not been diluted, they would have no basis for their lawsuit.

The Shareholders' pleadings demonstrate that the dilution of their equity interests was closely connected with the 2010 amendments to the Agreement, which retained the Delaware forum-selection clause. Importantly, the 2006 and 2008 Agreements had the same Delaware forum-selection clause. The Shareholders alleged as follows:

- The Shareholders had a previous agreement (with a Delaware forum-selection clause)  that named one of them, Jeffery Sheldon, as a "Significant Shareholder," a term which gave him preemptive rights and other rights relating to the sale of company shares. The other Shareholder, Andras Konya, was identified as a "Key Shareholder," and he did not have the same set of rights.

- In 2010, the IDev Parties decided "to dilute the holdings of the company's common shareholders to the point that the common stock holders were almost wiped out altogether." The reason for this dilution was "to permit the

3

venture capital stockholders and their select related parties to acquire newly issued preferred stock."

- The IDev Parties took many steps towards achieving this dilution of the equity interests. These steps included (1) causing the conversion of all preferred stock to common stock; (2) causing the reverse stock split of all common stock to reduce the number of common stock shares by a 100 to 1 factor; and (3) causing "the board of directors to join with them to amend the Shareholder's Agreement, eliminating Sheldon and other similarly situated shareholders as 'Significant Shareholders' with preemptive rights."

- "Immediately along with the transactions noted above, the [IDev Parties] set about to offer new preferred stock primarily to the venture capital defendants. In doing so, they offered—on a pro rata basis, but based only upon preferred stock holdings and not considering prior common stock holdings—preferred stock to other prior preferred stock holders. This offer served to significantly dilute the holdings of prior common stock holders and to enhance the percentage holdings of prior preferred stock holders."

- The IDev Parties caused the Agreement "to be amended in hopes of avoiding Sheldon's (and others') preemptive rights in respect of his common and preferred stock holdings."

The Shareholders' damages are based on the value of their shares prior to the dilution. The number and value of the shares will be determined by comparing their holdings under the 2008 Agreement and the 2010 Agreement. The Shareholders allege that:

- Sheldon's more than 5% holdings (before dilution) should result in several millions of dollars rather than approximately $20,000 after dilution.

- Konya's 2.4% holdings (before dilution) should result in over one million dollars rather than approximately $10,000 after dilution.

- Under their claim for damages, the 2010 Agreement is unenforceable.

This court has previously recognized that a claim may fall within the scope of an arbitration clause if the factual allegations "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that is the subject of the arbitration agreement.[1] *See AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 195 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). In *AutoNation*, a consumer sued for a violation of the Texas Finance Code in connection with a financing agreement that did not contain an arbitration clause. *Id.* at 194. However, the consumer had a purchase agreement that did contain an arbitration clause. *Id.* Although the arbitration provision in the purchase agreement was not limited to the words "arising out of," the court applied a "but for" test, concluding: "But for [the consumer's] purchase, there would have been no relationship between the parties and no financing transaction that is the basis of [the consumer's] claims." *Id.* at 197. Similarly, but for the Agreement in this case, there would be no relationship between the parties and no claims.

The Shareholders have clearly pleaded that the dilution of their equity interests was part of the same tortious conduct as the amendment to their Agreement. Therefore, the Shareholders' claims are, to borrow language from our arbitration jurisprudence, "enmeshed" and "intertwined" with the Agreement. *Cf. In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005) (orig. proceeding)

---

[1] Arbitration cases are germane to an analysis of a forum-selection clause because arbitration clauses are "another type of forum-selection clause." *See Smith v. Kenda Capital, LLC*, 451 S.W.3d 453, 457 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *In re AIU Ins. Co.*, 148 S.W.3d 109, 115 (Tex. 2004) (orig. proceeding)).

(holding that a personal injury claimant who was not a signatory to a contract to build a house was bound by the contract's arbitration agreement because her claim arose from the construction and repair of the house).

A plain reading of the Agreement confirms that the Shareholders' claims and damages arise out of that Agreement. One of the many amendments to the Agreement was a redefining of the term "Significant Shareholder," under which Sheldon was previously classified. Now, under the amended Agreement, that term is reserved for investors who acquired the stock that resulted in the dilution of the Shareholders' equity interests. The Agreement was amended to enable that dilution and to protect the investors who acquired the newly issued stock. The Shareholders would have no basis for their suit but for the Agreement. *Cf. In re H&R Block Fin. Advisors, Inc.*, 235 S.W.3d 177, 178 (Tex. 2007) (orig. proceeding) (per curiam) (investors would have no suit but for their investor account agreement).

The majority asserts that the purported obligations that the IDev Parties breached arise under either statute or common law, rather than the Agreement. The majority explains that the Shareholders could have asserted all of their claims without the Agreement. I disagree. The Agreement exists and the rights and obligations of the parties are set out in the Agreement. The IDev Parties' liability "must be determined by reference to it," rather than general obligations imposed by law. *See Weekley Homes*, 180 S.W.3d at 132. The lawsuit will focus on the parties' shares in the 2008 Agreement versus what they ended up with in the 2010 Agreement. All of their damages will be based on the amount of shares that they previously owned. The "but for" test has been met. *See In re H&R Block Fin. Advisors, Inc.*, 235 S.W.3d at 178.

I would hold that the Shareholders' claims arise out of the Agreement and are subject to the Agreement's forum-selection clause. Because the majority holds otherwise, I respectfully dissent.

/s/ Tracy Christopher
Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby. (Frost, C.J., majority).