In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-25-00196-CV

SERVICE FIRST AUTOMOTIVE LLC D/B/A CALIBER AUTO CARE,
Appellant

V.

CHRISTOPHER DAVID WAMSLEY, CHRISTOPHER JUSTIN
WAMSLEY, ESTELA GARCIA, ALEXANDER TRUJILLO, CARLOS
PEREZ GARCIA, LUIS PEREZ, WALMART, INC., AND MAVIS TIRE
SUPPLY, LLC D/B/A NTB TIRE & SERVICE CENTER, Appellees

_____

**On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 24-11-18070**

_____

**MEMORANDUM OPINION**

Service First Automotive LLC d/b/a Caliber Auto Care ("Caliber") filed a

notice of accelerated appeal from an order denying a motion to compel arbitration.

Caliber contends the trial court abused its discretion by denying Caliber's motion to

compel arbitration despite the existence of a binding arbitration clause in an invoice

signed by one of the plaintiffs. Caliber contends the other five plaintiffs are bound

by the same agreement because they seek to recover for services performed under the same agreement. We affirm the trial court's order.

## Background

Christopher David Wamsley, Christopher Justin Wamsley, Estela Garcia, Alexander Trujillo, Carlos Perez Garcia, and Luis Perez ("Plaintiffs" or "Appellees"), sued Caliber, Mavis Tire Supply, LLC d/b/a NTB Tire & Service Center ("NTB"), and Walmart, Inc., for personal injuries they sustained from a vehicle rollover allegedly caused by a tire blowout. Plaintiffs' Original Complaint alleges that (1) on February 27, 2023, Christopher David Wamsley ("Wamsley") took his 2016 Toyota Sequoia to Caliber to service the vehicle for squealing brakes, (2) Wamsley bought four tires from Walmart and they were installed on March 3, 2023, (3) Wamsley took his vehicle to Caliber for routine maintenance on March 16, 2024, and (4) he took the 2016 Toyota Sequoia to NTB on July 24, 2023, for an oil change and tire rotation. Plaintiffs allege each time the service provider inspected the vehicle, each failed to inform Wamsley that the Sequoia was grossly misaligned. The accident occurred on September 14, 2023. Plaintiffs allege the vehicle's improper alignment caused the tires to wear out at an accelerated rate which rendered them unsafe. Plaintiffs allege that on September 14, 2023, one of the front tires exploded, causing the driver to lose control of the vehicle, which rolled over, injuring

2

the occupants. In their petition, Plaintiffs assert claims against Caliber for negligence and for gross negligence.

Caliber filed a Motion to Compel Arbitration and to Stay or Dismiss Proceedings against Caliber. According to Caliber, at the time of service, Wamsley signed an invoice which contained a mediation and binding arbitration clause, and three additional invoices paid by Wamsley contain the same arbitration provision.[1]

In their response, Plaintiffs contend the arbitration clause is unenforceable because (1) five of the plaintiffs did not sign any paperwork at Caliber, (2) Wamsley never signed or assented to the purported arbitration agreement, (3) Wamsley signed only a credit card authorization and Caliber hid the arbitration in a receipt provided after completing the transaction, (4) the arbitration clause is unsigned, (5) the arbitration clause was not negotiated and was hidden in paperwork provided at the conclusion of the transaction, (6) the purported arbitration clause fails to conform to Texas contract law, and (7) the arbitration clause is unconscionable.

Plaintiffs attach four invoices to their response. Caliber Auto Care Invoice Number 207147 dated October 7, 2022, and containing thirteen pages states, "Guest requested a full synthetic oil change. Also if the vehicle passenger rear tire can be plugged or patched. Please check and advise." The invoice charged for an oil change

---

[1] The motion to compel arbitration references "attached Exhibit A, Invoice Number 334069 dates 2/27/2023 with signature[,]" but no exhibit is attached to the motion contained in the clerk's record.

3

and included Maintenance Digital Vehicle Inspection. The second and third pages state Terms of Service, including an agreement to pay costs for repossession, consent to receive marketing information, and an arbitration agreement in all capital letters, followed by the word "**Authorization:**" in bold font and a dated blank space for a signature. The remaining pages include an Inspection Report with vehicle service recommendations with photographs.

Caliber Auto Care Invoice Number 334069 dated February 27, 2023, and containing fifteen pages, states, "Customer states that the front brakes are squealing badly upon application. The front passenger side also seems to be making some sort of a grinding type noise whenever driving down the road. Please inspect and advise." The invoice charged for rear brake and rotor/drum service and included Courtesy Brake Inspection and Maintenance Digital Vehicle Inspection. The second and third pages state Terms of Service, including an agreement to pay costs for repossession, consent to receive marketing information, and an arbitration agreement in all capital letters, followed by the word "**Authorization:**" and a dated blank space for a signature. The remaining pages include an Inspection Report with vehicle service recommendations with photographs.

Caliber Auto Care Invoice Number 352805 dated March 16, 2023, and containing six pages, charges for an oil change and includes Term of Service but the text of the arbitration clause is scrambled and unreadable, followed by

"**Authorization:**" and a dated blank space for a signature. The remaining pages include findings and recommendations with photographs.

Caliber Auto Care Invoice Number 404224 dated May 9, 2023, and containing thirteen pages, indicates that the customer hears a squealing noise when turning the truck on or driving. There is no charge for service, and the invoice indicates they could not replicate the problem and advised the customer to return the vehicle if the issue became more prominent. The text of the Terms of Service, including the text of the arbitration clause, is scrambled and unreadable, followed by "**Authorization:**" and a dated blank space for a signature. The remaining pages include a garbled inspection report and recommendations with photographs.

An affidavit from Caliber representative Amanda Stanford, includes her statement that "On or about February 27, 2023, Plaintiff visited a Caliber location and was presented with a service invoice/receipt. This document included a printed arbitration agreement, which is a standard part of Caliber's customer documentation[,]" and "The Plaintiff signed the invoice/receipt, acknowledging and agreeing to the terms, including the provision requiring binding arbitration with the American Arbitration Association (AAA) for any disputes arising out of or relating to the services rendered."

An affidavit from Wamsley includes his statement that "I presented my vehicle, a Toyota Sequoia, for service at said Caliber location. At no point during the transaction did any Caliber employee or representative inform me or request my consent to arbitration in connection with the vehicle services at Caliber[,]" and "At the conclusion of the transaction, I was asked to pay and presented my credit card at a credit card terminal. At no point during the payment portion of the transaction, nor at any other time, was I made aware of any arbitration clause. I was led to believe that my signature was required for credit card payment authorization only. Any allegation that I consented to arbitration is false. Further, I was fraudulently induced into signing a document including an arbitration clause because that is not what was presented to me during payment."

The motion was set for submission on May 2, 2025. On May 7, 2025, the trial court denied the motion to compel arbitration.

## Appeal or Mandamus

Caliber filed a notice of appeal and paid for the clerk's record but filed a petition for a writ of mandamus instead of an Appellant's Brief. The Clerk of the Court notified the parties that the brief was due June 23, 2025, but was not filed, that the Court received a mandamus petition to be filed in Appeal Number 09-25-00196-CV, and that the mandamus petition does not explain why an appeal is not available under sections 51.016 or 171.098 of the Civil Practice and Remedies Code. The

6

Clerk gave Caliber ten days' notice to advise the Court whether the mandamus petition is a conditional request for alternative relief in the event the Court determines that it lacks appellate jurisdiction over the accelerated appeal. Caliber did not respond to the Court's notice.

On July 17, 2025, the Clerk of the Court notified the parties that the response was late and asked Caliber to respond by July 28, 2025. Caliber did not respond to the Clerk's late notice.

On August 4, 2025, the Clerk of the Court issued a late notice for the Appellant's Brief, notified the parties that the appeal would be submitted without briefs unless a brief and a motion for extension of time were filed by August 14, 2025, and warned Caliber that submission without briefs may result in dismissal for want of prosecution.

On August 18, 2025, the Clerk of the Court notified the parties by letter that the appeal would be submitted on September 8, 2025, and requested a response to the mandamus petition by August 28, 2025.

Appellees filed a response to Caliber's mandamus petition. They do not argue that Caliber had an adequate remedy by appeal. They ask this Court to affirm the trial court's order.

Caliber filed a petition for a writ of mandamus when an accelerated appeal provided an adequate remedy. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.016

7

(authorizing accelerated appeal from an interlocutory order denying a motion to compel arbitration under the Federal Arbitration Act), 171.098 (authorizing accelerated appeal from an interlocutory order denying a motion to compel arbitration under the Texas Arbitration Act). Caliber cites cases that pre-date the enactment of section 51.016 in 2009. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (orig. proceeding); *In re FirstMerit Bank*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). Caliber is not entitled to mandamus relief because it has not shown that it lacks an adequate remedy by appeal. *See In re Grand Parkway Infrastructure, LLC*, No. 09-24-00117-CV, 2024 WL 1787880, at **1-2 (Tex. App.—Beaumont Apr. 25, 2024, orig. proceeding) (mem. op.) (denying mandamus relief due to relator's failure to explain why an accelerated appeal was not an adequate available remedy).

Unlike the relator in *Grand Parkway Infrastructure*, Caliber invoked our appellate jurisdiction by filing a timely notice of appeal with the trial court clerk and by arranging for the filing of a clerk's record that contains an appealable interlocutory order and the notice of appeal. *See* Tex. R. App. P. 25.1(a), 26.1(b), 28.1(b), 34.5(a)(5), (7), 35.3(a). "Generally, a party is not entitled to relief it does not request." *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 392 (Tex. 2011); *Betancourt v. Ohmer*, No. 09-18-00121-CV, 2019 WL 237333, at *2, n.1 (Tex. App.—Beaumont Jan. 17, 2019, no. pet.) (mem. op.). In its prayer for

8

relief, Caliber asks this Court to "1. Issue a writ of mandamus directing the trial court to vacate its May 7, 2025 Order;" and "2. Compel arbitration of all claims against Caliber[.]" Although Caliber did not expressly request appellate relief, it did challenge the trial court's order denying its motion to compel arbitration.

Nothing in the procedures for interlocutory appeals and mandamus actions prevents an appellate court from treating an accelerated appeal as a petition for writ of mandamus. *CMH Homes v. Perez*, 340 S.W.3d 444, 453 (Tex. 2011). If a court's appellate jurisdiction is timely invoked, as it was here, nothing in the procedures for interlocutory appeals and mandamus actions prevents an appellate court from treating a petition for writ of mandamus as an accelerated appeal. *See* Tex. R. App. P. 38.8(a)(2) (if an appellant fails to timely file a brief, the appellate court may decline to dismiss the appeal and give further direction to the case as it considers proper), 38.9 (briefs are intended to acquaint the court with the case and to present argument that will enable the court to decide the case). Accordingly, we will treat the mandamus petition as a brief for an accelerated appeal.

Existence of Agreement to Arbitrate

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement. *Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 585-86 (Tex. 2022) (FAA); *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013) (TAA). We

9

review de novo whether an arbitration agreement is enforceable. *Rachal*, 403 S.W.3d at 843; *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). A strong presumption in favor of arbitration "arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). "A party can challenge (1) the validity of the contract as a whole, (2) the validity of the arbitration provision specifically, and (3) whether an agreement exists at all." *Sotero*, 642 S.W.3d at 586. A challenge to the validity of the arbitration provision specifically is for the court to decide unless clearly and unmistakably delegated to the arbitrator. *Id.* The court decides whether an agreement exists at all. *Id.*

"Arbitration agreements are interpreted under traditional contract principles." *Webster*, 128 S.W.3d at 227. "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Id.* at 229. We "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.*

The arbitration provision included within each invoice/receipt states:

DISPUTE    SETTLEMENT    AND    ARBITRATION,
CUSTOMER AND CALIBER ACKNOWLEDGE AND AGREE

10

THAT IN THE EVENT A DISPUTE OR CONTROVERSY ARISES CONCERNING THIS AGREEMENT OR THE REPAIRS TO THE VEHICLE, CUSTOMER & CALIBER SHALL FIRST ATTEMPT IN GOOD FAITH TO SETTLE THE DISPUTE BY MEDIATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION UNDER ITS CONSUMER OR COMMERCIAL MEDIATION PROCEDURES, AS APPLICABLE. IN THE EVENT THAT THE MATTER IS NOT SETTLED BY MEDIATION AS PROVIDED FOR IN THIS PARAGRAPH, CUSTOMER & CALIBER AGREE THAT SUCH DISPUTE OR CONTROVERSY SHALL BE RESOLVED BY BINDING ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION UNDER ITS CONSUMER OR COMMERCIAL ARBITRATION RULES, AS APPLICABLE. CUSTOMER HEREBY ACKNOWLEDGES THAT A COPY OF SUCH RULES, A GUIDE TO THE APPLICABLE PROCEDURES AND INFORMATION NOTING THE NEAREST AMERICAN ARBITRATION ASSOCIATION LOCATION IS AVAILABLE FOR CUSTOMER'S REVIEW AT www.adr.org/aaa/faces/rules. CUSTOMER MAY ALSO CONTACT THE AMERICAN ARBITRATION ASSOCIATION AT 212-484-4181 or 888-855-9575. JUDGMENT ON THE ARBITRATION AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. IF EITHER CUSTOMER OR CALIBER ELECT TO RESOLVE A CLAIM BY ARBITRATION, THAT CLAIM SHALL BE ARBITRATED ONLY ON AN INDIVIDUAL BASIS. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY, WHETHER ON BEHALF OF THE GENERAL PUBLIC, OTHER CALIBER CUSTOMERS OR OTHER PERSONS SIMILARLY SITUATED. NOTWITHSTANDING THE FOREGOING, CALIBER AND CUSTOMER AGREE THAT CLAIMS ARISING UNDER THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"), SHALL BE MEDIATED BUT SHALL NOT BE ARBITRATED. IF MEDIATION DOES NOT RESOLVE A CLAIM UNDER THE MMWA, THE CUSTOMER MAY PURSUE THE MMWA CLAIM, AND ONLY THE MMWA CLAIM, IN COURT. ANY CLAIMS NOT UNDER THE MMWA SHALL BE ARBITRATED AS SET FORTH HEREIN.

IN THE EVENT THE CUSTOMER DOES BRING AN MMWA CLAIM IN COURT, CUSTOMER AND CALIBER EXPRESSLY WAIVE THEIR RIGHT TO A TRIAL BY JURY AS TO SUCH CLAIM.

On each invoice, immediately below this paragraph appears "**Authorization:**[,]" a blank for a signature, and a date that corresponds to the date of the invoice. None of the documents bear a signature on that line. Wamsley admitted he signed separate authorizations to use his credit card each time he paid for services from Caliber.

Caliber argues the trial court abused its discretion by denying Caliber's motion to compel arbitration despite the existence of an arbitration clause in the invoices. It argues the arbitration provision was conspicuous and displayed in capital letters, and that Plaintiffs' claims arise out of Caliber's services to Wamsley's vehicle.

Caliber cites four cases as support for its argument that by signing credit card authorizations and paying for Caliber's services on three occasions in which the receipt included a conspicuous arbitration clause, Wamsley is bound by the arbitration clause even if he failed to read it or to sign it. In one case, a management-level employee voluntarily participating in a stock option plan signed an agreement requiring arbitration of any cognizable claim that may exist against the other. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87 (Tex. 1996) (orig. proceeding). He later argued the arbitration agreement was unenforceable because he never actually read

12

it and therefore did not understand its effect. *Id.* at 90. The Supreme Court held a person who has an opportunity to read an arbitration agreement and signs it is presumed to know its contents. *Id.*

In a second case, pharmacies that joined a network were bound by an arbitration clause contained in a Provider Agreement even though they did not sign that particular document, because documents the pharmacies did sign referenced the Provider Agreement and agreed to its terms. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding).

In a third case, buyers of a manufactured home who signed an arbitration agreement with the retailer failed to establish that the manufacturer's limited right as a third-party beneficiary to refuse to arbitrate rendered the arbitration agreement so one-sided as to be substantively unconscionable. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (orig. proceeding).

In a fourth case, a used car buyer's claim that the seller improperly charged purchasers vehicle preparation fees fell within the scope of agreement to arbitrate any controversy arising out of or relating to the Purchase Agreement that contained the arbitration clause. *Autonation USA Corp. v. Leroy*, 105 S.W.3d 190, 197-98 n.2 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). We find these cases are inapplicable to the facts in this case.

13

Rather, the threshold question we must determine as a matter of law is whether Caliber established a valid arbitration agreement exists. *Sotero*, 642 S.W.3d at 586; *Webster*, 128 S.W.3d at 227.

We conclude, based on the record before us, that Caliber failed to establish that a valid arbitration agreement exists. Caliber failed to show that the credit card authorization Wamsley signed expressly incorporated the arbitration clause. Caliber argues Wamsley's repeated conduct of obtaining vehicle services from Caliber after Caliber had provided a receipt that included an arbitration clause binds Wamsley to its terms through implied assent even though he did not separately sign the arbitration clause. We reject this argument. Although the facts show Wamsley authorized the use of his credit card to pay for the services Caliber provided, the arbitration clause which appears on the printed paperwork has a line for a signature but each one is unsigned. There is nothing in the documentation Caliber provided to Wamsley after Wamsley authorized the credit card transactions which notifies Wamsley that the credit card authorization incorporates the arbitration agreement, nor does it notify Wamsley that he agreed to arbitrate any disputes. *See Nationwide Coin & Bullion Reserve, Inc.*, No. 01-20-00777-CV, 2022 Tex. App. LEXIS 1721, **11-12 (Tex. App. — Houston [1st Dist.] Mar. 15, 2022, pet denied) (mem. op.) (Nationwide also has not submitted evidence that demonstrates that Ciarlone assented to the arbitration provision after he received the invoice. Under these facts,

14

an arbitration provision on the back of an invoice, which is provided to the buyer after the transaction is complete, is not enough to show a meeting of the minds for contract formation and modification).

## Conclusion

Caliber failed to meet its burden to establish the existence of a valid arbitration agreement. Thus, the trial court did not abuse its discretion when it denied Caliber's Motion to Compel Arbitration. Accordingly, we affirm the trial court's order.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on September 8, 2025
Opinion Delivered January 8, 2026

Before Golemon, C.J., Johnson and Wright, JJ.

15