**In re STANFORD GROUP COMPANY.**

**Stanford Group Company, Appellant**

**v.**

**D. Mark Tidwell and Charles W. Rawl, Appellees.**

**Nos. 14-08-00408-CV, 14-08-00415-CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 9, 2008.

Stephen H. Lee and N. Kimberly Hoesl, Houston, TX, for Appellant.

Mike O'Brien and Matthew Berton Henneman, Houston, TX, for Appellees.

Panel consists of Chief Justice HEDGES and Justices GUZMAN and BROWN.

## OPINION

HEDGES, Chief Justice.

In this matter, we have consolidated a petition for writ of mandamus with an interlocutory appeal. In both proceedings, appellant/relator, Stanford Group Compa-

ny ("Stanford Group"), challenges the trial court's order denying its motion to compel arbitration against appellees/real parties in interest, D. Mark Tidwell and Charles W. Rawl ("Tidwell and Rawl"). Stanford Group argues that the trial court improperly denied its motion to compel arbitration. We dismiss the interlocutory appeal for want of jurisdiction and conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

Tidwell and Rawl were employed by Stanford Group as financial advisors. In connection with their employment, Tidwell and Rawl each signed a Uniform Application for Securities Industry Registration or Transfer ("Form U-4"), which is used to register securities professionals with various securities exchanges and organizations. The Form U-4 contained an arbitration clause requiring Tidwell and Rawl to "arbitrate any dispute, claim or controversy ... between [Tidwell or Rawl] and [Stanford Group] ... that is required to be arbitrated under the rules ... of the [Self-Regulatory Organizations] indicated in Section 4...." Section 4 included the National Association of Securities Dealers ("NASD").[1] Additionally, Tidwell and Rawl executed various promissory notes payable to Stanford Group. The promissory notes contained an arbitration clause mandating arbitration of "any controversy arising out of or relating to" the notes.

Tidwell and Rawl alleged that during their employment, they learned that Stanford Group was engaging in various unethical and illegal business practices, including overstating the asset value of individuals in a manner designed to mislead potential investors and purging electronic data from its computers in response to an investigation by the Securities Exchange Commission. Tidwell and Rawl allege that although they encouraged management to investigate and correct these practices, they were ignored. According to Tidwell and Rawl, they left the company after realizing that they could possibly be implicated in the alleged illegal acts.[2]

The following month, Stanford Group initiated FINRA arbitration proceedings against Tidwell and Rawl to collect on the promissory notes. Stanford Group alleged that Tidwell and Rawl still owed money on the notes when their employment ended, and that the notes became immediately due and payable upon their departure from the company. Tidwell and Rawl filed answers and asserted various defenses in the FINRA arbitration proceedings.

Weeks after the FINRA arbitration on the promissory notes commenced, Tidwell and Rawl filed an employment discrimination suit in state court, alleging that they were constructively discharged by Stanford Group in violation of the Texas Labor Code. Specifically, Tidwell and Rawl contended in their first amended petition that they were constructively discharged by Stanford Group for refusing to engage in Stanford Group's unethical and illegal business practices. These alleged illegal practices include Stanford Group's: (1) prohibiting its financial advisors from fil-

1. In July 2007, NASD was consolidated into what is now known as the Financial Industry Regulatory Authority ("FINRA"). *See In re H & R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding). Courts continue to enforce NASD arbitration clauses through FINRA arbitration and interpret and enforce NASD's rules as applicable to FINRA. *See id.* Accordingly, we use the acronym FINRA to include NASD.

2. The parties dispute the basis for Tidwell and Rawl's December 2007 departure from the company. Stanford Group claims that they were terminated, while Tidwell and Rawl claim that they were forced to resign.

ing mandatory securities forms for clients possessing IRA accounts containing Stanford International Bank, Ltd. certificates of deposit; (2) neglecting to notify holders of such IRA accounts of the civil and criminal penalties associated with the failure to file the mandatory securities forms; (3) violating FINRA regulations by overstating the asset value of individuals in a manner designed to mislead potential investors; (4) ordering the removal or destruction of information contained in client or company files in response to an ongoing SEC investigation into Stanford Group's certificate of deposit sales practices; and (5) purging electronic data from its computers in response to the SEC investigation. Tidwell and Rawl alleged that after they refused to engage and participate in these illegal practices, Stanford Group forced them out of the company. They further contended that Stanford Group's conduct is actionable under *Sabine Pilot Serv., Inc. v. Hauck.* 687 S.W.2d 733 (Tex.1985).

Stanford Group answered the employment suit with a motion to compel arbitration, contending that the Form U–4 arbitration agreements require the employment claims to be arbitrated. Tidwell and Rawl responded to the motion to compel by insisting that their employment claims were excluded from arbitration under FINRA rule 13201. Rule 13201, titled "Statutory Employment Discrimination Claims," provides:

> A claim alleging employment discrimination, including sexual harassment, in violation of a statute, is not required to be arbitrated under the Code. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose. If the parties agree to arbitrate such a claim, the claim will be administered under Rule 13802.

Tidwell and Rawl argued that, despite the broad Form U–4 arbitration clauses, rule 13201 authorized their employment claims to be prosecuted in state court. They further argued that FINRA's limitations on discovery rendered arbitration an inappropriate forum in which to litigate the employment matter.[3] Replying to Tidwell and Rawl's rule 13201 exclusion argument, Stanford Group contended that rule 13201 permits a claim to be excluded from arbitration only if it is a *statutory* employment claim. Stanford Group argued that because Tidwell and Rawl's constructive discharge claim was a judicial cause of action created by the Texas Supreme Court in *Sabine Pilot,* rule 13201 was not applicable, and arbitration of their employment claim was required.

Following a hearing, the trial court denied Stanford Group's motion to compel arbitration. In dual proceedings, Stanford Group now challenges the trial court's order denying its motion to compel arbitration by way of interlocutory appeal and petition for writ of mandamus; we have consolidated the two proceedings into one appeal. In this consolidated matter, the parties dispute only the scope of the arbitration clauses, that is, whether Tidwell and Rawl's constructive discharge claims are covered by the Form U–4 arbitration agreements.

## II. APPLICABLE ARBITRATION ACT

The Texas General Arbitration Act ("TAA") and the Federal Arbitration Act ("FAA") provide alternative procedur-

3. FINRA rule 13056(a) limits requests for documents or information to "identification of individuals, entities, and time periods related to the dispute." Rule 13510 strongly discourages depositions in arbitration and "the panel may permit depositions ... under very limited circumstances...."

al vehicles for relief. *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 853 (Tex.App.-Houston [14th Dist.] 2007, orig. proceeding). If the trial court denies arbitration based on the TAA, the order is subject to interlocutory appeal. Tex. Civ. Prac. & Rem.Code § 171.098(a)(1). Relief from a denial of arbitration under the FAA, however, must be pursued by mandamus. *In re Poly–America, L.P.*, 262 S.W.3d 337, 345 (Tex. 2008) (orig. proceeding). Thus, as a threshold matter, we must determine which arbitration act applies.

Under the Supremacy Clause, the FAA preempts otherwise applicable state laws, including the TAA. *Jack B. Anglin, Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex.1992). The FAA applies to all disputes in state or federal courts arising out of a "contract evidencing a transaction involving commerce if the contract affects interstate commerce." *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 276–77, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex.App.-Houston [14th Dist.] 2004, no pet.). "Commerce" is construed broadly and encompasses all contracts relating to interstate commerce. *In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760, 765 (Tex. App.-Houston [1st Dist.] 2002, orig. proceeding).

The trial court proceedings in this case involve an employment dispute in the securities industry, partially governed by the Form U–4 arbitration agreements. The Form U–4 agreements arise in interstate commerce, and they involve the sale of securities. *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 195 S.W.3d 807, 813 (Tex.App.-Dallas 2006, orig. proceeding) (concluding that a Form U–4 is a contract involving the sale of securities). The sale of securities has been held to involve interstate commerce. *See id.; Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 659 (5th Cir.1995) (reasoning that U–4 registration involved interstate commerce because it was a contract involving sale of securities); *Eurocapital Group., Ltd. v. Goldman Sachs & Co.*, 17 S.W.3d 426, 430 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (recognizing that account agreement concerning sale of securities involved interstate commerce). Furthermore, Texas courts have consistently found that the Form U–4 is a contract involving interstate commerce and that its arbitration clause is enforceable under the FAA. *In re Merrill Lynch*, 195 S.W.3d at 813; *Wachovia Sec., LLC v. Emery*, 186 S.W.3d 107, 112 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 131 S.W.3d 709, 712 (Tex. App.-Dallas 2004, orig. proceeding); *In re Scott*, 100 S.W.3d 575, 579 (Tex.App.-Fort Worth 2003, orig. proceeding). Because the Form U–4 is a contract involving the sale of securities and the sale of securities involves interstate commerce, we conclude that the FAA applies.

Having determined that the FAA applies, mandamus, not an interlocutory appeal, is the procedural vehicle for relief requested by Stanford Group. *See In re Poly–America*, 262 S.W.3d at 345. Accordingly, we dismiss Stanford Group's interlocutory appeal and consider the merits of its petition for writ of mandamus. We now turn to the substance of Stanford Group's complaint.

## III. PETITION FOR WRIT OF MANDAMUS

### A. *Standard of Review*

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion when there is no adequate appellate remedy at law. *In re H & R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 899 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding). An abuse of

discretion occurs if the trial court's decision is so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *See id.* A trial court has no discretion in determining what the law is and on applying the law to the facts. *AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190, 195 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding). The trial court's failure to analyze or apply the law correctly is an abuse of discretion. *Id.*

Because a trial court cannot abuse its discretion in reaching a correct result for the wrong reasons, we will uphold the trial court's order on any ground supported by the record. *Id.* The relator must establish that the facts of the case and controlling law permitted the trial court to make but one decision. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding). In reviewing a denial of a motion to compel arbitration, we review the factual conclusions under a legal sufficiency or "no evidence" standard and legal conclusions de novo. *McReynolds v. Elston,* 222 S.W.3d 731, 739 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

A party moving to compel arbitration must prove (1) the existence of a valid agreement to arbitrate and (2) a dispute that falls within the scope of the agreement. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding); *TMI, Inc. v. Brooks,* 225 S.W.3d 783, 791 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Any doubts on the scope of the agreement must be resolved in favor of arbitration. *Prudential Sec., Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex.1995). In fact, the policy in favor of enforcing arbitration agreements is so compelling that a trial court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation covering the dispute at issue. *Id.; Elston,* 222 S.W.3d at 740.

The parties in this case do not dispute the existence of a valid arbitration agreement. Rather, the issue is whether Tidwell and Rawl's state employment claims are covered by the arbitration agreements.

### *B. Scope of Arbitration Agreement*

Whether a claim falls within the scope of an arbitration agreement is a question of law we review de novo. *See Elston,* 222 S.W.3d at 740 (reasoning that whether a claim falls within the scope of an arbitration agreement involves the trial court's legal interpretation of the agreement, and we review such legal interpretations de novo). We look at the facts alleged, rather than the legal causes of actions presented, and consider whether the facts touch matters covered by the underlying arbitration agreement. *Leroy,* 105 S.W.3d at 195. In the absence of any express provision excluding a particular grievance or complaint from arbitration, only the "most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Here, the Form U-4 arbitration clause requires Tidwell and Rawl to arbitrate "any dispute ... that is required to be arbitrated under the [FINRA] rules...." FINRA rule 13200(a) provides:

> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
>
> Members;
>
> Members and Associated Persons; or
>
> Associated Persons.

It is undisputed that Stanford Group is a member and that Tidwell and Rawl are associated persons under FINRA. In their pleadings, Tidwell and Rawl assert a cause of action for "wrongful termination/employment discrimination." Tidwell and Rawl base their employment claim on various practices and acts of Stanford Group. More specifically, they contend that Stanford Group: (1) prohibited its financial advisors from filing mandatory security forms for clients possessing IRA accounts containing Stanford International Bank, Ltd. certificates of deposit; (2) neglected to notify holders of such IRA accounts of the civil and criminal penalties associated with the failure to file the mandatory securities forms; (3) violated FINRA regulations by overstating the asset value of individuals in a manner designed to mislead potential investors; (4) ordered the removal or destruction of information contained in client or company files in response to an ongoing SEC investigation into Stanford Group's certificate of deposit sales practices; and (5) purged electronic data from its computers in response to the SEC investigation. According to Tidwell and Rawl, they were constructively discharged for refusing to engage in these alleged illegal acts and practices.

The factual allegations asserted by Tidwell and Rawl reflect a dispute between Stanford Group on one side, and Tidwell and Rawl on the other side, which rose from Stanford Group's business activities in the securities industry. Accordingly, rule 13200 requires that the employment dispute be arbitrated. However, an exclusion articulated in Rule 13201 places certain **statutory** employment discrimination claims outside Rule 13200's reach. Rule 13201 provides:

> 13201. A claim alleging employment discrimination, including sexual harassment, in violation of a statute, is not required to be arbitrated under the Code. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose. If the parties agree to arbitrate such a claim, the claim will be administered under Rule 13802.

The plain language of the rule 13201 exclusion requires that Tidwell and Rawl's state claims be a discrimination claim that is "in violation of a statute." Accordingly, our task is to determine whether Tidwell and Rawl's factual allegations that Stanford Group wrongfully discriminated against them for "refusing to participate in illegal acts relating to the marketing and sale of [Stanford Group's] financial products" form the basis of an employment claim in violation of a statute. Tidwell and Rawl claim that Stanford Group violated chapter 21 of the Texas Labor Code. Section 21.051 of the Texas Labor Code defines discrimination by an employer and, in particular, provides:

> "[a]n employer commits an unlawful employment practice if because of race, color, disability, sex, national origin, or age the employer:
>
> (1) ... discharges an individual, or ... discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee ... in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

Tex. Lab.Code § 21.051.

Tidwell and Rawl do not allege that they were discriminated against based on any of the protected classes listed in section 21.051. Although they generally claim discrimination under chapter 21 of the Texas Labor Code, Tidwell and Rawl fail to identify a provision under chapter 21 or any

other statute prohibiting discrimination based on the refusal to participate in an employer's illegal acts and practices. Rather, the conduct forming the basis of Tidwell and Rawl's claims are actionable under *Sabine Pilot,* a judicially-created cause of action, not a statutory one.[4] *See Sabine Pilot,* 687 S.W.2d at 734–35; *see also Camunes v. Frontier Enters., Inc.,* 61 S.W.3d 579, 580–81 (Tex.App.-San Antonio 2001, pet. denied) (recognizing *Sabine Pilot* cause of action as a judicially-created exception to the employment-at-will doctrine).

■ Because the exclusionary language of rule 13201 requires that the employment claim be statutorily created before the exclusion will apply, Tidwell and Rawl's claims are within the scope of rule 13200. *See In re Next Fin. Group, Inc.,* No. 08–0192, 271 S.W.3d 263, at 269–70, 2008 WL 4891735, at *5 (Tex. Nov.14, 2008) (orig. proceeding) (holding that an identical statutory discrimination exception was not applicable because the employee's cause of action, premised on his refusal to engage in illegal acts, was judicially created by *Sabine Pilot;* therefore, the claim was subject to arbitration). Once a party seeking to compel arbitration establishes that an agreement exists under the FAA and that the claims raised are within the agreement's scope, the trial court has no discretion but to compel arbitration and stay its proceedings pending arbitration. *Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996). Accordingly,

the trial court erred by denying Stanford Group's motion to compel arbitration pursuant to the FAA.[5]

## IV. CONCLUSION

■ We conclude that the trial court erroneously denied Stanford Group's motion to compel arbitration. A party who is erroneously denied the right to arbitrate under the FAA has no adequate remedy at law, and mandamus relief is appropriate. *Id.* at 945. We conditionally grant Stanford Group's writ of mandamus and direct the trial court to order Tidwell and Rawl to arbitrate their claims under the FAA. The writ of mandamus will issue only if the trial court fails to comply. We dismiss Stanford Group's interlocutory appeal for want of jurisdiction.

---

4. In 1985, the Texas Supreme Court recognized the need for an exception to the Texas employment-at-will doctrine for those employees wrongfully terminated for refusing to engage in illegal activities and created a cause of action for the discharge of an employee who refuses to perform such illegal acts. *Sabine Pilot,* 687 S.W.2d at 734–35.

5. Tidwell and Rawl also counter the motion to compel arbitration by arguing that FIN-

RA's limitations on discovery renders arbitration an improper forum for resolving the employment claims. Because the trial court has no choice but to grant a motion to compel where the movant has established an agreement exists and the claims raised are within the agreement's scope, their discovery-limitation argument has no merit. *See Cantella,* 924 S.W.2d at 944.