

## NUMBER 13-12-00166-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

EDWARD D. JONES, L.P.,                                  **Appellants,**
GEOFFERY L. HALL AND AMY S. HALL,

**v.**

EVERARDO VILLAREAL,                                       **Appellee.**

### On appeal from the County Court of Law No. 7
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Garza

This is an interlocutory appeal from the trial court's order denying the motion of

appellant, Edward D. Jones, L.P. ("Edward Jones"), to compel arbitration under the

Federal Arbitration Act ("FAA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2011); *CMH Homes v. Perez*, 340 S.W.3d 444, 448–49 (Tex. 2011) (explaining that section 51.016 of the civil practice and remedies code provides for interlocutory appeals in FAA cases so long as "it would be permitted under the same circumstances in federal court under [9 U.S.C.] section 16."). Appellants, Geoffrey L. Hall ("Hall") and Amy S. Hall, also appeal from the trial court's order. By five issues, appellants contend the trial court erred in: (1) denying their motion to compel arbitration because Edward Jones and appellee, Everardo Villareal,[1] agreed to arbitration under the FAA; (2) finding that Villareal's claims were outside the scope of the arbitration agreement; (3) finding that the agreement containing the arbitration clause was a unilateral agreement; (4) finding that Villareal's claims can be enforced without reference to the agreement; and (5) finding that Edward Jones waived its right to compel arbitration. Because Villareal's claims do not fall within the scope of the arbitration agreement and can be enforced without reference to the agreement, the trial court did not err in refusing to compel arbitration, and we affirm the trial court's order.

## I. BACKGROUND

On March 2008, Villareal and his wife, Ruth, opened a brokerage account with Hall, then a financial advisor with Edward Jones. The Edward Jones account agreement ("the Agreement") contains an arbitration provision. Pursuant to opening the account, Villareal and Ruth signed an Edward Jones Account Authorization and Acknowledgment Form, which contained the following statement referencing the arbitration provision: "The Edward Jones Account Agreement and Disclosure

---

[1] We note that, throughout the record, appellee's surname is spelled variously as "Villareal" and "Villarreal." We use the spelling that appears below appellee's signature on documents in the record.

Statement contains, on page 19, paragraph 1, a binding arbitration provision which may be enforced by the parties." The Agreement on page 19, states, in relevant part:

> This Agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:
>
> 1. All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>
>     . . . .
>
> Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents, and/or employees for me, to this Agreement, or to the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations from the inception of such accounts shall be settled by arbitration in accordance with the rules then in effect of the Board of Directors of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. as I may elect.

Almost a year later, on February 25, 2009, Villareal loaned Hall $52,850 and Hall, in exchange, signed a promissory note. The promissory note is typewritten on plain paper with no letterhead. The note does not mention Edward Jones or reflect that Edward Jones is a party to the note. The note states:

> Geoffrey L. Hall, "MAKER," agrees to pay to Everardo Villareal, "HOLDER," the sum of $52,850.00 (fifty-two thousand eight-hundred fifty and no/100s Dollars), at 3601 North Bryan Road, Mission, Texas, with interest thereon from the date any portion is advanced to MAKER, at the rate of eight percent (8%) per annum, simple interest.
>
> A full payment of all principal outstanding plus interest accrued thereon will be payable on December 31, 2010. This note may be paid in whole or in part prior to maturity. Payments shall be applied first to accrued interest, with the balance of payment applied to outstanding principal.
>
> This note is payable in U.S. Dollars. At any time the maximum rate of interest applicable to this transaction shall not exceed the legal maximum rate of interest for a note of this type. Any sums paid in excess of any

lawful limitation shall be applied to principal. This note and amounts due hereunder are not assignable.

After default herein, this note will bear interest at the highest legal rate for this type of note until paid in full. Upon any default, MAKER agrees to pay a reasonable attorney's fee for any and all services of an attorney, whether in or out of court, and for appeal and post-judgment collection legal services.

The note is signed by both parties.

Hall allegedly failed to repay Villareal pursuant to the note. Accordingly, on January 19, 2011, Villareal sued the Halls and Edward Jones, alleging breach of contract, fraud, conversion, and theft. Villareal filed an amended petition on May 25, 2011. On June 15, 2011, Edward Jones filed an answer, subject to its right to compel Villareal's claims to arbitration. On August 15, 2011, Edward Jones filed its motion to compel arbitration.[2] On January 23, 2012 and February 1, 2012, the trial court held a hearing on the motion to compel. Edward Jones presented the testimony of Eva Mullis, an Edward Jones financial advisor that succeeded Hall. The Halls presented Hall's testimony.

At the conclusion of the hearing, the trial court denied the motion to compel arbitration. On February 28, 2012, the trial court signed an order denying the motion, which contained the following "findings":[3]

1.  The Promissory Note which is the subject of Plaintiff's cause of action does not contain an arbitration agreement within it's [sic] four corners;

2.  The Promissory Note which is the subject of Plaintiff's cause of action is clear and unambiguous.

---

[2] The Halls joined in Edward Jones's motion to compel arbitration.

[3] We note that only "finding" number one is a finding of fact; "findings" two through seven are conclusions of law, which we review de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009).

3. As presented, the Securities Account Agreement, which Defendant, Edward D. Jones, relies upon on [in its] Motion to Compel Arbitration and Stay all Proceedings[,] is a unilateral agreement[,] and there was no evidence presented to demonstrate a meeting of the minds, or that the contract was accepted by both parties to the proposed contract.

4. The Securities Account Agreement, which Defendant, Edward D. Jones[,] relies upon on [in its] Motion to Compel Arbitration and Stay all Proceedings, contains an Arbitration clause on page 19, which clearly and unambiguously limits its scope to disputes arising out of the Securities Account Agreement.

5. The Promissory Note and disputes arising out of said Promissory Note, do not fall within the scope of the The [sic] Securities Account Agreement, which Defendant, Edward D. Jones, relies upon on [in its] Motion to Compel Arbitration and Stay all Proceedings.

6. The Promissory Note which is the subject of Plaintiff's cause of action is capable of enforcement without reference to the Securities Account Agreement[,] which Defendant, Edward D. Jones[,] relies upon on [in its] Motion to Compel Arbitration and Stall all Proceedings.

7. The Defendant has waived the right to compel arbitration by allowing discovery and making judicial admissions without seeking a hearing on a motion for protection prior to the date of the said admissions being made. Compelling arbitration at this stage would cause Plaintiff undue hardship, by forcing him to relitigate matters in arbitration that are settled under this cause of action.

This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

"We review a trial court's denial on a motion to compel arbitration for an abuse of discretion." *Nazareth Hall Nursing Ctr. v. Melendez*, 372 S.W.3d 301, 304 (Tex. App.—El Paso 2012, no pet.) (citing *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862–63 (Tex. App.—Dallas 2010, no pet.)). Under that standard, "we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *see Melendez*, 372 S.W.3d at 305.

5

"Whether an arbitration clause imposes a duty to arbitrate is a matter of contract interpretation and a question of law for the Court to review de novo." *Ascendant Anesthesia PLLC v. Abazi,* 348 S.W3d 454, 458 (Tex. App.—Dallas 2011, no pet.). "In a de novo review, the trial court's decision is given absolutely no deference." *Id.*

Although Villareal opposes arbitration, he does not contest that the FAA applies to the Account Agreement with Edward Jones. "A party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration clause, and (2) the claims in dispute fall within that agreement's scope." *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *see In re East Rio Hondo Water Supply Corp.*, No. 13-12-538-CV, 2012 Tex. App. LEXIS 9098, at *10 (Tex. App.—Corpus Christi Oct. 29, 2012, orig. proceeding) (mem. op.). "When deciding whether claims fall within an arbitration agreement, courts employ a strong presumption in favor of arbitration." *In re Rubiola*, 334 S.W.3d at 225. "Nonetheless, the strong policy in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or to allow modification of the unambiguous meaning of the arbitration clause." *Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

"To determine whether a claim falls within the scope of the agreement, courts must 'focus on the factual allegations of the complaint, rather than the legal causes of action asserted.'" *In re Rubiola*, 334 S.W.3d at 225 (quoting *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995)); *In re Stanford Group*, 273 S.W.3d 807, 813 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) ("We look at the facts alleged, rather than the legal causes of actions presented, and consider whether the

facts touch matters covered by the underlying arbitration agreement.") Generally, under the FAA, state law governs whether the contracting parties agreed to arbitrate and federal law determines the scope of the arbitration clause. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding); *see In re Rubiola*, 334 S.W.3d at 224 ("Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate.").

Arbitration agreements containing phrases such as "relating to" are interpreted broadly. *In re Guggenheim Corporate Funding, LLC*, 380 S.W.3d 879, 887–88 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (citing *In re Bank One, N.A.*, 216 S.W.3d 825. 826-27 (Tex. 2007) (resolving doubt as to scope of arbitration agreement covering disputes "arising from or relating in any way to this Agreement" in favor of coverage); *950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship*, 316 S.W.3d 191, 196–97 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that broad arbitration provision defining "disputes" as "any dispute under or related to the partnership agreement or any document executed pursuant to the partnership agreement or any of the transactions contemplated by the partnership agreement shall be subject to arbitration" applied to all claims); *TMI Inc. v. Brooks*, 225 S.W.3d 783, 791 n.7 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding) (holding that phrase "arising out of and/or related to" in arbitration agreement is "broad form in nature, evidencing the parties' intent to be inclusive rather than exclusive")). "However, if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration." *Serv. Corp. Int'l v. Lopez*, 162 S.W.3d 801, 810 (Tex. App.—Corpus Christi

7

2005, no pet.); *see Osornia*, 367 S.W.3d at 714 n.4.; *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 195 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding); *see also In re Estate of Rowan*, No. 05-06-681-CV, 2007 Tex. App. LEXIS 4466, at *8–9 (Tex. App.—Dallas June 7, 2007, no pet.) (mem. op.).

### III. DISCUSSION

The issue we must resolve is whether Villareal's claims fall within the scope of the Agreement's arbitration provision.

### A. Whether Claims are Outside the Scope of the Agreement

By their second issue, appellants contend the trial court erred in finding that Villareal's claims are outside the scope of the Agreement. Appellants argue that the dispute falls within the scope of the Agreement's arbitration provision—even if the dispute does not relate to or arise out of the Agreement for brokerage services— because the promissory note is a "transaction" between Villareal and Hall, an Edward Jones "agent" or "employee." Villareal argues that the Agreement limits its scope to disputes arising out of the Agreement, and that the dispute regarding the promissory note does not fall within the scope of the Agreement.

We begin by examining Villareal's live pleading. *See In re Rubiola*, 334 S.W.3d at 225. The factual allegations in Villareal's complaint center on his allegation that under the promissory note, Hall agreed to repay the sum of $52,850 and has failed to do so. Specifically, Villareal alleges, in pertinent part:

9. On or about February 25th 2009[,] Defendants entered into a promissory note with the Plaintiff. The agreement, which is attached and incorporated herein as EXHIBIT "A", Defendant agreed to repay the sum of $52,850.00 with interest by December 31st, 2010.

10. Demand was made for payment on and after the date of the maturity of the debt. No payments have been made and Defendant has verbally stated that he will not pay the debt. A demand letter was sent on January 4th 2010 a copy of which is attached and incorporated herein as EXHIBIT "B".

12. Defendant took possession of the money from Plaintiff on the pretense that it was for the use of his business. Plaintiff relied on Defendant's assertion that the loaned money would be used for his business which is part of a nation wide financial planning company.[4]

. . . .

14. Several attempts were made by Plaintiff to discuss the payment of the debt with Defendant. The Defendant stopped communication with the Plaintiff and refused to pay the debt.

15. The Defendants have failed and refused to fulfill their obligations under the promissory note. Defendants materially mislead Plaintiffs [sic] into lending a substantial sum of money. Defendant have [sic] used the money intend[ed] for use by Edward Jones and utilized it for other business ventures and personal spending.

. . . .

31. The evidence will show that Defendant fraudulently entered into the agreement in question by never intending to pay the loan he secured from the Defendant. [sic] Defendant used the name and reputation of his Company, Edward Jones, to convince Plaintiff that the loan was a good investment. The evidence will show that the Defendant pleaded for more time and stated that his wife's new business would make Money to cover the cost of the loan. Subsequently Defendant informed Plaintiff that he would not repay the loan.

We construe the petition to allege that Hall breached the promissory note and fraudulently represented to Villareal that the $52,850 loan would be used to further Hall's business as a broker with Edward Jones and was therefore a good investment, but that Hall subsequently used the loan proceeds for other business ventures and

---

[4] We note that the paragraphs in the petition are not numbered sequentially.

9

personal expenditures.  The petition does not allege any acts by Edward Jones, except insofar as Hall was acting as an agent or principal of Edward Jones.[5]

To determine whether the facts alleged in the petition "touch matters covered by the underlying arbitration agreement," *see In re Stanford Group*, 273 S.W.3d at 813, we review the services provided under the Agreement.  The "General Account Provisions" of the Agreement describes the services provided to Villareal by Edward Jones:

> **Services Provided by Edward Jones Under the Terms of this Agreement**
>
> I understand that the account I establish with Edward Jones pursuant to the terms of this Agreement is for brokerage services.  I further understand that you [Edward Jones] will facilitate and execute securities transactions on my behalf and provide custody services for my securities and other financial instruments.  You may also provided [sic] me with related services and information, such as investment research, investor education, financial tools (including financial calculators and asset allocation analysis), recommendations about whether to buy, sell, or hold securities, as well as other information about financial products and services.  I understand that you will not charge a separate fee for these services and that they are part of your brokerage services.  I understand that your brokerage and related services do not constitute financial planning or any other investment advisory service.

The facts alleged in the petition—Hall's alleged representation that the loan was for his business as an Edward Jones broker and was a good investment, and his failure to pay the promissory note—do not appear to "touch matters covered by the underlying arbitration agreement."  *See id.*  The "recommendations" regarding buying and selling are limited to the purchase and sale of securities.  We have examined the entire Agreement.  Although the Agreement envisions that Edward Jones may, at its discretion, make loans to a customer, it does not envision or discuss the circumstances

---

[5] We note that although Villareal's brief asserts that Edward Jones is vicariously liable for Hall's actions because Hall was acting as Edward Jones's agent, Villareal's live petition makes no such allegation.  We also note that at the evidentiary hearing, Hall testified that he did not have authority to sign documents on behalf of Edward Jones.

at issue here, in which a customer (Villareal) loaned money to an Edward Jones employee or broker. Accordingly, the claims do not "arise out of," nor are they "related to" the Agreement.

We turn next to the language of the arbitration provision. In construing the arbitration provision, we first determine whether it is possible to enforce the contract as written, without resort to parol evidence. *J.M. Davidson*, *Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *In re Guggenheim Corporate Funding LLC*, 380 S.W.3d at 887 (citing *J.M. Davidson*, 128 S.W.3d at 229). In the arbitration context, we must give effect to the parties' intent, whether enforcing an agreement to arbitrate or construing an arbitration clause. *Id.* Following arbitration jurisprudence, we apply a common-sense examination of the underlying claim and the forum-selection clause to determine if the claim comes within the scope of the clause. *Id.* (citing *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884 (Tex. 2010) (orig. proceeding) (per curiam)). "A contract is unambiguous if it can be given a definite or certain legal meaning." *J.M. Davidson*, 128 S.W.3d at 229. "On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *Id.* A contract is not ambiguous merely because the parties disagree on its meaning. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex. 2006). The issue of contractual ambiguity may be considered sua sponte by a reviewing court. *See Progressive Cnty. Mut. Ins. Co. v. Ke*lley, 284 S.W.3d 805, 808 (Tex. 2009).

11

Here, appellants argue that the arbitration provision applies to "[a]ny controversy . . . relating to any of [Plaintiff's] accounts or transactions with [Edward Jones] . . . ." According to appellants, "Plaintiff's claims against Edward Jones under the promissory note 'relate to' an alleged 'transaction' between Plaintiff and Edward Jones and therefore, they are within the scope of the arbitration agreement." Villareal argues that appellants' characterization of the arbitration provision "omit[s] the language, 'for me, to this Agreement, or the breach thereof,' which limits the scope of the provision." According to Villareal, (1) the arbitration provision ties the arbitrable controversy "to this Agreement," which was for "brokerage services"; and (2) because his claim involves the failure to pay a promissory note, which does not involve brokerage services, the claim therefore does not fall within the scope of the Agreement. Villareal argues that, "[t]he problem with [appellants'] argument is the subject promissory note is not a transaction that Edward Jones offers, is not covered by the Account Agreement, and the arbitration provision limits itself to the Account Agreement and its breach."

To determine whether, as appellants argue, the arbitration provision covers *any* controversy relating to *any* transaction with *any* Edward Jones employee, we must decide what the parties intended by inserting the phrase "to this Agreement." As noted above, we are to determine whether it is possible to enforce the Agreement as written, and our primary concern is to ascertain the intentions of the parties as expressed in their contract. S*ee J.M. Davidson*, 128 S.W.3d at 229. The arbitration provision states:

> Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents, and/or employees for me, to this Agreement, or to the breach thereof, . . . shall be settled by arbitration . . . .

We conclude that we cannot give the arbitration provision a definite or certain legal meaning because it is unclear whether (1) "to this Agreement" restricts the scope of the arbitration provision to controversies relating to Villareal's transactions with Edward Jones under the Agreement, or (2) "to this Agreement" is a separate independent category of arbitrable disputes—meaning that any controversy relating to any transaction with an Edward Jones employee (even if not a transaction under the Agreement) is subject to arbitration. *See id.* We note that if the second interpretation is proper, "or to the breach thereof" is also a separate independent category of arbitrable disputes and should properly read, "or to the breach of this Agreement." We hold that the arbitration provision is subject to two or more reasonable interpretations, and is therefore ambiguous. *See id.* Therefore, we next consider parol evidence of the parties' intent. *See New Concept Const. Co. v. Kirbyville Consol. Indep. Sch. Dist.*, 119 S.W.3d 468, 470 (Tex. App.—Beaumont 2003, pet. denied) ("Only when the court finds the contract ambiguous may the court consider parol evidence of the parties' intentions.") (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995)).

At the evidentiary hearing, Eva Mullis testified that the promissory note between Hall and Villareal was "not a normal part of the transactions" handled at Edward Jones. She also testified that she understood the arbitration clause in the Agreement to cover disputes arising from a client's investments with Edward Jones.

Hall testified that he drafted the promissory note and that it was a "completely independent separate agreement" and not part of the Agreement.[6] He testified that he

---

[6] In the promissory note, Hall agrees, in the event of default, to pay reasonable attorney's fees "whether in or out of court."

13

did not have authority to sign contracts on Edward Jones's behalf. On cross-examination, the following exchange occurred:

Q [Villareal's counsel]: When you signed that promissory note, did you include it in the transactions that are under this account agreement?

A [Hall]: No, sir.

Q: Did you ever list it under the assets or debts or liabilities assets of Mr. Villareal in his portfolio with Edward Jones?

A: Of course not.

Q: Why not?

A: Because it was not an asset under his Edward Jones account.

Q: But it was money owed to him?

A: It was owed by the individual who signed the promissory note which is me, personally.

. . . .

Q: Is the account agreement part of the promissory note?

A: No, sir.

Q: Okay. When you drafted the promissory note, did you ever mention the account agreement to Mr. Villareal?

A: No, sir.

Q: Did you ever tell him that the promissory note was affected by the account agreement?

A: No, sir.

Q: Is it your opinion that the promissory note is affected by the account agreement?

14

A: I'm not—I'm not qualified to give you that. I think that's a legal—

Q: From your understanding since you're the one that drafted the account agreement, the promissory note, I'm sorry, was it your understanding that the promissory note fell under the purview of the account agreement?

A: No, sir.

. . . .

Q: I'm going to have you, I believe it's Defendant's Exhibit 1, page 19, Could you read the second paragraph—the second sentence of the second paragraph? Starting with "any controversy."

A: Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents, and/or employees for me, to this [A]greement, or to the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations from the inception of such accounts shall be settled by arbitration in accordance with the rules then in effect of the Board of Directors—

Q: That's sufficient for our purpose right now. Right there on the fourth line on that run[-]on sentence of that paragraph, there is a clause. It says, "to this [A]greement." What does that mean?

[E. Jones's counsel]: Checked [sic] to the characterization of the agreement. That's a run[-]on sentence. He wants to ask a question about the agreement—

Q: It grammatically is a run[-]on sentence.

[the Court]: Overruled.

Q: What does it mean "to this [A]greement"?

15

A: Well, I think it says any complaints or controversies arising out of the client's agreement with the firm.

We conclude that Hall's testimony established that the parties intended for the arbitration clause to apply only to disputes arising out of or related to the Agreement. *See id.*; *J.M. Davidson*, 128 S.W.3d at 229. Accordingly, we hold that Villareal's claims do not fall within the scope of the Agreement. We overrule appellants' second issue.

## B. Whether Claims are Enforceable Without Reference to the Agreement

By their fourth issue, appellants contend the trial court erred in finding that Villareal's claims can be enforced without reference to the Agreement. As noted, the trial court specifically found that the promissory note was enforceable without reference to the Agreement.

"[I]f the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration." *Osornia,* 367 S.W.3d at 714 n.4 (quoting *AutoNation USA Corp.*, 105 S.W.3d at 195); *Lopez*, 162 S.W.3d at 810 (same); *In re Nestle USA–Bev. Div., Inc.*, 82 S.W.3d 767, 776 (Tex. App.—Corpus Christi 2002, orig. proceeding) (same). Here, the facts alleged in support of Villareal's claim—that Hall agreed to repay $52,850.00 plus interest by December 31, 2010 and has failed to do so—are completely independent of the Agreement and the claim can be maintained without reference to the Agreement. We hold that the trial court did not abuse its discretion in denying appellants' motion to compel arbitration on the ground that Villareal's claims are enforceable without reference to the Agreement, and we overrule appellants' fourth issue.

16

## IV. CONCLUSION

"An order denying arbitration must be upheld if it is proper on any basis considered by the trial court." *In re Weeks Marine, Inc.,* 242 S.W.3d 849, 854 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding). We have found that two of the bases considered by the trial court were proper. We hold that the trial court did not err in denying appellants' motion to compel arbitration and affirm the trial court's judgment.[7]

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
21st day of February, 2013.

---

[7] Because we have found the trial court did not err in refusing to compel arbitration, we need not address appellants' remaining challenges to the trial court's order. *See* TEX. R. APP. P. 47.1.